UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TERRANCE BOWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-cv-00072-DML-SEB |
| | ) |
| CITY OF INDIANAPOLIS and | ) |
| Officer KEVIN BROWN, | ) |
| , | ) |
| | ) |
| Defendants. | ) |

# Order on Defendants' Motion for Summary Judgment

Defendants City of Indianapolis and Officer Kevin Brown seek summary judgment on all claims against them brought by plaintiff Terrance Bowens in this excessive force case. The defendants' motion is GRANTED in PART and DENIED in PART. As discussed below, the court determines that (a) Officer Brown is entitled to summary judgment on the state law claims; (b) the City of Indianapolis is entitled to summary judgment on the state law assault claim; and (c) genuine issues of material fact that require a jury to decide whether the force used by Officer Brown was excessive make summary judgment inappropriate on all other claims.

## Summary Judgment Standard

Under Fed. R. Civ. P. 56(a), summary judgment may be granted only if there "is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. Substantive law determines the facts that are

material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. The Seventh Circuit recently has pointedly reminded district courts that they must resist any urge to "weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez,* 2014 WL 3824318 at *5 (7th Cir. Aug. 5, 2014). Instead, the evidence and all reasonable inferences that can be drawn from the evidence must be viewed in the light that is most favorable to the nonmoving party. *Id.*

The court will first describe the evidence pertinent to the resolution of the defendants' motion. It will then address Mr. Bowens's Fourth Amendment excessive force claim before moving to Mr. Bowens's Indiana state law claims.

## The Evidence and Reasonable Inferences Therefrom

In the early morning hours of August 7, 2012, the Indianapolis Metropolitan Police Department received a complaint of a disturbance between a man and a woman at a hotel on the east side of Indianapolis. When they arrived at the hotel, the woman reported that her boyfriend had threatened to kill her and had left. The officers took the woman to her residence at an apartment complex and were not able to find the man. Another call came before dawn that the man had shown up at the woman's apartment and three police officers (not the ones who had responded to the hotel complaint) responded to that call. (Brown Dep., Dkt. 49-7, at pp. 27-28). They were Officers Woody Burton and Tara Van Deman (who arrived in the same

squad car) and defendant Officer Kevin Brown, who arrived in a separate squad car. (*Id.*). The officers learned that the man had just recently "taken off on foot." (*Id.* at p. 28). Officers Burton and Van Deman stayed at the complex and Officer Brown drove away to scour the area for anyone who was out walking at 5:30 in the morning. (*Id.*). After only a few minutes, Officer Brown heard a radio call from Officer Burton that the man had been found at the complex. (*Id.* at pp. 31-32). Officer Brown drove back to the complex. (*Id.* at 32).

It is at this point that the parties' versions of the facts or the reasonable inferences that may be drawn from them begin to differ in material ways.

Officer Brown's Testimony

Officer Brown asserts that he saw that Officer Burton had his gun trained on plaintiff Terrance Bowens, who was about 10-12 feet away from Burton. (Brown Dep., Dkt. 49-7, at p. 33-34). Officer Brown stopped his squad car behind Bowens, got out, and drew his gun. He was about 10 feet behind Bowens. (*Id* at pp. 37, 40). He saw that plaintiff Bowens was "on the sidewalk on his knees and he had his hands raised about shoulder height." (*Id.* at pp. 34-35). Bowens's hands were "not open or closed," "just hanging there," and his back was to Officer Brown. (*Id.* at p. 36).

Officer Brown heard Officer Burton command Mr. Bowens "repeatedly" (two to three times) to lie down on the ground and put his hands out to his side. (*Id.* at pp. 41-42 and 45). Mr. Bowens did not comply with those commands. (*Id.* at p. 42). "He just refuses to do anything Officer Burton tells him to do." (*Id.* at p. 46). When

3

Mr. Bowens "refused to comply with Officer Burton's commands to lay prone," Officer Brown moved in closer behind Mr. Bowens and, with his gun drawn, used his right foot to push Mr. Bowens in the middle of his back, causing him to go to the ground and then Mr. Bowens laid his arms out. (*Id.* at pp. 43, 46, 47). Officer Brown immediately then handcuffed Mr. Bowens, the other officers took control, and Officer Brown left on another police run. (*Id.* at p. 43, 48).

Officer Brown perceived that Mr. Bowens "was not fighting" and "was not fleeing" (*id.* at 57) but was "resisting" the other officer's commands. "He would not lay down prone when he was told to do so numerous times." *Id.* at p. 56). Officer Brown elaborated:

> When Officer Burton is telling him [Terrance Bowens] to lay down on the ground, put your hands to the side, when he's not doing that, he is actually resisting his officer presence and his physical – his verbal commands to do so. At that point, I'm not going to move in to try to arrest him for the simple reason with him not complying to Officer Burton's verbal commands tells me that he may be thinking of fleeing, running – excuse me, fleeing, fighting or something else, and at that point I'm not going to take any chances on Officer Burton's safety, mine or the general public's.

(*Id.* at pp. 57-58).

Officer Brown "felt that using my foot just to push him to force him to lie down was the least amount of force possible." (*Id.* at 57). Officer Brown denies that he kicked Terrance Bowens (*id.* at p. 47) and describes the force he used as "no more than like you push the gas pedal on the car." (*Id.* at p. 43).

Mr. Bowens's Testimony

According to Mr. Bowens, he had not failed to comply with any commands. Rather, he heard a voice in the dark telling him one time to "get on the ground" (Bowens Dep., Dkt. 53-1, at pp. 48, 54), and he immediately began to comply with that command. (*Id.* at pp. 51-52). He put his hands in the air and moved to his knees so that he could fall forward from that position to the ground. (*Id.*) At the very moment his knees touched the pavement and with his hands in the air, Mr. Bowens felt a kick to his back that forced him to the ground, and he put his arms out. (*Id.* at 52-53). Only "seconds" passed between the time Terrance Bowens was told to "get on the ground" and when the kick to his back sent him to the ground. (*Id.* at 50).

A handcuffed Mr. Bowens was put in a paddy wagon, which drove away. Mr. Bowens was in pain, was dizzy, and could not breathe. (*Id.* at p. 58). He hollered to the driver that he needed to go to the hospital. (*Id.*) The driver pulled over, an ambulance arrived, and Mr. Bowens was seen in the emergency room at Wishard Hospital. (*Id.* at p. 63).

Plaintiff's Medical Evidence

The medical staff at Wishard determined that Mr. Bowens's left kidney was ruptured—he was hemorrhaging blood and fluids were leaking. (Affidavit of Timothy A. Masterson, M.D., ¶¶ 13-14). The symptoms were consistent with acute trauma in and around the left kidney. (*Id.*, ¶ 14). Mr. Bowens remained in the hospital for nine days while doctors treated the injury with pain medication and a

nephrostomy tube to drain the kidney and the fluid surrounding it. (*Id.* ¶ 16). Conservative treatment by changing the tube several times and administering pain medication continued thereafter but did not successfully return Mr. Bowens to his "native state of health," primarily because of recurrent kidney infection. (*Id.* ¶ 22). Eventually, on March 29, 2013, Dr. Masterson surgically removed Mr. Bowens's left kidney. (*Id.* ¶ 24).

According to Dr. Masterson, Mr. Bowens suffers from a congenital kidney condition—an ureteropelvic junction obstruction—but Mr. Bowens could have lived the rest of his life with that condition and without experiencing any symptoms from it. (*Id.* ¶¶ 10-12).

In Dr. Masterson's expert opinion, the treatment of Mr. Bowens's left kidney and its surgical removal was necessitated by a traumatic injury to his kidney suffered on August 7, 2012. (*Id.* ¶ 30). In other words, this evidence would permit a jury to infer that Officer Brown used an amount of force to Mr. Bowens's back that had the effect of rupturing his kidney.

Police Report

Officer Van Deman wrote the police department report regarding the arrest. (Burton Dep., Dkt. 53-4 at p. 53). She testified that had she been told by Officers Brown or Burton that Mr. Bowens had been noncompliant with their orders, she would have included that information in the report. (Van Deman Dep., Dkt. 53-5, at pp. 47-48). The police report does not indicate that Terrance Bowens was

noncompliant with any officer's orders. (Brown Dep, Dkt. 53-3, at pp. 60-61; Burton Dep., Dkt. 53-4 at p. 57; Van Deman Dep. at p. 47).

## Analysis

**I.  Genuine issues of fact require a jury to decide whether Officer Brown used excessive force.**

Terrance Bowens's federal claim against Officer Kevin Brown arises under 42 U.S.C. § 1983. He asserts that Officer Brown, acting under color of law, used excessive force in effecting his arrest, in violation of the Fourth Amendment's proscription of unreasonable seizures. "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin,* 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir. 1987)). Several factors may be germane in assessing whether the degree of force used was justified, including "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" *Miller,* 2014 WL 3824318 at *6 (7th Cir. Aug. 5, 2014) (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989)).

Officer Brown justified his use of force on Terrance Bowens and assessed him as a safety threat because Mr. Bowens persistently refused to follow another officer's repeated commands to lie on the ground. Mr. Bowens's alleged continued refusal to follow Officer Burton's commands is *the* recurring theme of Officer

7

Brown's testimony. (*See* Brown Dep. at pp. 41, 42, 45, 46, 47, 56, 57-58). In addition to the fact that the police report contains no suggestion that Mr. Bowens refused any officer's commands, Officer Brown's testimony that Mr. Bowens repeatedly did so is contradicted by Mr. Bowens. Mr. Bowens has testified that he was given one command to get on the ground, he immediately began to comply with that police command by putting his hands in the air and getting to his knees, and before he had any possible opportunity to move from his knees to the ground, he was kicked in the back. This court may not decide on summary judgment which version is more plausible or should be believed.[1]

There is still another conflict in the evidence on summary judgment. Officer Brown testified that the force he used with his right foot on Mr. Bowens's back was no more than one uses to depress the gas pedal of a car, yet there is expert medical evidence that the force was so strong that it caused a rupture to Mr. Bowens's left kidney, necessitating its surgical removal. Photographs also depict injury to Mr. Bowens's back that a jury may view as inconsistent with Officer Brown's description of the force he used. The photographs and medical evidence may permit a jury to both (a) discount the veracity of Officer Brown's version of events and (b) believe it more likely than not that the force was not reasonable. *See Miller v. Gonzalez,* 2014

---

[1] Though the defendants have submitted an expert opinion that Officer Brown's force was reasonable (Dkt. 49-8), that opinion does not view the facts in the light most favorable to Mr. Bowens or resolve disputed facts in his favor. For example, the opinion rests in part on a factual assumption that Mr. Bowens was not complying with repeated officer commands. (*See* Dkt. 49-8 at pp. 3, 4, and 5 (Bowens heard "but ignored" verbal commands to "get on the ground"; "Bowens did not comply with verbal commands").

8

WL 3824318 at *6 (7th Cir. Aug. 5, 2014) (discrepancy between officer's testimony and other evidence may permit a jury to conclude that an officer was "manipulating facts" to cover up his conduct); *McAllister v. Price,* 615 F.3d 877, 881-82 (7th Cir. 2010) ("jury may look to the type of injury suffered by a plaintiff to determine whether or not the amount of force used by law enforcement was reasonable"; injury "is evidence of the degree of force imposed and the reasonableness of that force").

These same fact and witness credibility issues prevent the court from finding that Officer Brown is entitled to qualified immunity. Under Mr. Bowens's version of events, he was a subdued suspect following the one command he was given by a police officer to get to the ground and before he had any possible opportunity to move from his knees to the ground (surely he was not expected to simply fall to the ground from a standing position),[2] he received a kick to the back that ruptured his kidney. *See Miller,* 2014 WL 3824318 at *6-7 ("the law is clearly established that police officers cannot use 'significant force' on suspects who are only passively resisting arrest"). Where the defendant's argument for qualified immunity depends on disputed facts, the defendant is not entitled to summary judgment on that ground. *Gutierrez v. Kermon,* 722 F.3d 1003 (7th Cir. 2013).

---

[2] At oral argument, defendants' counsel argued that Mr. Bowens's testimony that he had only gotten to his knees at the time Officer Brown's foot hit his back is an admission that he had not followed the officer's instruction. That argument ignores, however, the very basis for Officer Brown's decision to use force—the supposed failure by Mr. Bowens to respond to repeated commands. Moreover, it is not sensible to characterize a person as resisting an officer's instruction before the person has an opportunity to comply with it. Under Mr. Bowens's version of the facts, it was at the very moment that his knees touched the pavement so he could move himself to the ground that he was kicked in the back.

9

## II. The defendants are entitled to summary judgment on some state law claims but not others.

### A. Mr. Bowens's state law claims against Officer Brown are precluded by the Indiana Tort Claims Act because Officer Brown was acting within the scope of his employment.

Mr. Bowens's complaint also seeks relief against Officer Brown under Indiana state law for assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. These state law claims arise out of the same facts as his federal claim.

Under Indiana's Tort Claims Act—which applies to Mr. Bowens's state law claims—when a suit alleges wrongdoing by a government employee for acts he committed within the scope of his employment, the plaintiff is barred from seeking relief personally against the employee. Ind. Code § 34-13-3-5(b).[3] Instead, the plaintiff is limited to seeking relief against the government employer based on its derivative liability under principles of *respondeat superior*. *See Carver v. Crawford*, 564 N.E.2d 330, 334 (Ind. Ct. App. 1990) (liability may be imputed to government employer under *respondeat superior*).

As Mr. Bowens conceded at oral argument, his state law claims against Officer Brown are based on acts within the scope of Officer Brown's employment as a police officer, and the Tort Claims Act therefore prohibits him from seeking relief

---

[3] To obtain relief personally against the government employee, a plaintiff must allege (and eventually prove) that the employee's act or omission giving rise to liability is (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally. Ind. Code § 34-13-3-5-(c).

personally against Officer Brown. Officer Brown is therefore entitled to summary judgment on all state law claims brought against him.

The court now turns to whether the City is entitled to summary judgment on the claims against it.

### B. Mr. Bowens's state law claims against the City are not barred by the Indiana Tort Claims Act.

Mr. Bowens seeks relief against the City for Officer Brown's actions under *respondeat superior* principles and is pursuing causes of action of assault, battery, negligent infliction of emotional distress, and intentional infliction of emotional distress. The court's disposition of these claims follows slightly different paths.

First, the court finds that the assault claim cannot survive as a matter of law because there are no facts to support an essential element of this cause of action. Assault is a wrongful "touching of the mind," and provides relief for the mental harm one suffers because of fear that another is about to cause him imminent harm. *Cullison v. Medley,* 570 N.E.2d 27, 30 (Ind. 1991). A defendant's threat to use a weapon or physical force against the plaintiff can constitute an assault. *Id.* Under the facts most favorable to Mr. Bowens, Officer Brown's actions could not constitute an assault. Mr. Bowens asserts that Officer Brown struck him from behind suddenly and without any warning, and he admits that he was not even aware of Officer Brown's presence. There was simply no point in time before Mr. Bowens was struck in the back that he was in fear of that harm.

The viability of the other three state law claims requires the court to apply an immunity provision of the Indiana Tort Claims Act. Indiana Code § 34-13-3-3(8)

provides that there is no liability for a loss that results from the government employee's "enforcement of or failure to . . . enforce (A) a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." In 1993, the Indiana Supreme Court addressed this law enforcement immunity provision in the context of a claim that a police officer had committed the torts of assault and battery through the use of excessive force in effecting a lawful arrest. *Kemezy v. Peters,* 622 N.E.2d 1296 (Ind. 1993). The court decided that this provision "provides no refuge to governmental entities or their employees for the breach of a private duty." *Id.* at 1297. And because police officers "owe a private duty to refrain from using excessive force in the course of making arrests," then "the use of excessive force is not conduct immunized" by this provision of the Tort Claims Act. *Id.* After the *Kemezy* case, the Indiana Supreme Court abandoned the public/private duty test as the touchstone for law enforcement immunity, and the courts of appeal then divided over whether *Kemezy* remained good law. In 2010, the Indiana Supreme Court in *Wilson v. Isaacs,* 929 N.E.2d 200 (Ind. 2010), revisited the effect of the law enforcement immunity provision on police officer excessive force claims.

In *Wilson,* the court once again held that the use of excessive force is not conduct immunized under the law enforcement immunity provision. The court ruled that law enforcement immunity does not apply to conduct constrained by a statutory obligation imposed on the law enforcement officer or employer. The court recognized that Ind. Code § 35-41-3-3(b) authorizes the use of force only "if the officer reasonably believes that the force is necessary to effect a lawful arrest," and

12

noted that an officer who uses unnecessary or excessive force may be committing the torts of assault and battery. 929 N.E.2d at 203. The court ruled that this statutory provision "restrains the statutory immunity [under the Tort Claims Act] from erecting a shield to liability for conduct contrary to the [reasonable force] statute." *Id.* at 203-04. Thus, "the law enforcement immunity of the Indiana Tort Claims Act does not shield the government from liability for excessive force by police. . . ." *Id.* at 204.

The City concedes that under *Wilson,* the Tort Claims Act does not provide immunity for Mr. Bowens's battery claim. The same factual disputes, discussed *supra* at pp. 7-9, that prevent summary judgment on the Fourth Amendment excessive force claim against Officer Brown prevent summary judgment on the battery claim against the City.[4]

The City insists, however, that the law enforcement immunity provision of the Tort Claims Act immunizes the City against Mr. Bowens's claims for negligent and intentional infliction of emotional distress, even though those claims are based on the very same alleged excessive force conduct that underlies the battery claim. The court rejects the City's argument, but it acknowledges the existence of several decisions from this district and the Northern District of Indiana in which the courts concluded that the Indiana Tort Claims Act does provide immunity against emotional distress torts. Those decisions rely on Judge Lozano's application of

---

[4] The City concedes that the state law battery claim against it should be treated the same as the Fourth Amendment claim against Officer Brown.

13

*Wilson* to an intentional infliction of emotional distress ("IIED") claim in the case of *Parish v. City of Elkhart,* 2010 WL 4054271 (N.D. Ind. Oct. 15, 2010). *See Hendricks v. New Albany Police Dep't,* 749 F. Supp. 2d 863, 873 (S.D. Ind. 2010) (citing *Parish* as authority for dismissing the plaintiff's IIED claim based on the Tort Claims Act's law enforcement immunity provision); *Serino v. Hensley,* 2012 WL 6025751 at *7 (S.D. Ind. Dec. 4, 2012) (similarly citing *Parish*); *Ashcraft v. City of Crown Point,* 2013 WL 5934612 at *6 (N.D. Ind. Nov. 5, 2013) (relying on *Serino* and *Parish*).

In *Parish,* the plaintiff brought an IIED claim based on conduct he alleged amounted to malicious prosecution. Judge Lozano recognized, as this court does as well, that *Wilson* holds that when a statutory duty applies to the conduct at issue, that statutory proscription affects the availability of immunity granted by the law enforcement provision of the Tort Claims Act. 2010 WL 4054271 at *3. The plaintiff in *Parish* was unable to point to any statute that the government defendant had violated in connection with the IIED tort claim, and therefore the government defendant retained its immunity and the IIED claim was properly dismissed. *Id.* at *4.

In this case, however, plaintiff Bowens *can* point to an alleged statutory violation by Officer Brown as the foundation of his emotional distress claims. It is the same statute—Ind. Code § 35-41-3-3(b)—that the Indiana Supreme Court decided in *Wilson* "restrains the statutory immunity [under the Tort Claims Act] from erecting a shield to liability for conduct contrary to the statute." 929 N.E.2d at

14

203-04. The determination here that law enforcement immunity does not preclude Mr. Bowens's emotional distress claims is therefore consistent with Judge Lozano's decision in *Parish:* If the alleged conduct is proscribed by state statute, law enforcement immunity does not apply; if the conduct is not proscribed by statute, law enforcement immunity does apply.

Moreover, immunities afforded governmental defendants focus not on legal theories but on *conduct*. The court must therefore focus on whether the alleged *conduct* is immunized under the law enforcement immunity provision at Ind. Code § 34-13-3-3(8), not whether the immunity applies to a particular legal theory. *Wilson* teaches that the requirement under Ind. Code § 35-41-3-3(b) that an officer refrain from excessive force precludes immunization of conduct that constitutes excessive force. If the conduct is not immunized, then the tort theories arising in connection with that conduct may be pursued.

Because the alleged excessive force is the foundation of Mr. Bowens's emotional distress claims and because excessive force is not immunized conduct, the court rejects the City's argument that it is immunized by the Tort Claims Act against the claims for negligent and intentional infliction of emotional distress.[5]

---

[5] The court stresses that the City limited its summary judgment argument on the emotional distress claims to the proposition that such claims—no matter their foundational facts—are barred by the law enforcement immunity provision. The court also stresses that the City did not distinguish between the claims for negligent emotional distress and intentional emotional distress.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. (Dkt. 47).

The court GRANTS summary judgment to defendant Kevin Brown on all of plaintiff Bowens's state law claims but DENIES summary judgment on the Section 1983 Fourth Amendment excessive force claim, including on qualified immunity grounds.

The court GRANTS summary judgment to defendant City of Indianapolis on plaintiff Bowens's state law assault claim but DENIES summary judgment to the City on Mr. Bowens's state law claims for battery, negligent infliction of emotional distress, and intentional infliction of emotional distress.

So ORDERED.

Date: September 19, 2014

_____
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system